UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-12059-RGS

JULIO TORRES, PEDRO DE LA CRUZ,
on behalf of themselves and all others similarly situated

v.

NICHE, INC.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

December 18, 2013

STEARNS, D.J.

Plaintiffs, former employees of defendant Niche, Inc., allege that they and several hundreds of their coworkers were laid off without receiving the sixty days advance notice required by the Worker Adjustment and Retraining Notification Act (WARN Act), 29 U.S.C. § 2101 *et seq.* Niche moves for summary judgment, arguing that the mass layoff was precipitated by an unforeseeable business circumstance, namely the sudden cessation of government business, and that a prior WARN Act notice was not required.

BACKGROUND

Niche manufactures cargo parachutes for the United States military. Niche began contracting with the Department of Defense (DOD) in 2007. Sales increased in volume and dollar amount every year through 2011, by

which time Niche had become the paramount supplier of low-velocity parachutes to DOD. As of September of 2011, Niche had garnered several fixed-price, fixed-quantity low-velocity parachute contracts, with deliveries to DOD scheduled through February of 2012. In October of 2011, DLA Aviation, a DOD purchasing agency, solicited bids for an "indefinite quantity" of low-velocity cargo parachutes. The DLA Aviation solicitation stipulated that the contract would come with "no guarantees on the number of delivery orders which may occur during the contract period." Niche placed a bid on the contract the following month and, confident of winning, purchased eight million dollars of raw materials in anticipation.

    Niche was awarded the contract on April 17, 2012. On April 23, 2012, Roy Peay, a manager at DLA Aviation, returned a telephone call from Niche's president, Roland Letendre. During the call, Letendre asked Peay when Niche would receive the first order under the new contract. Peay responded that he did not know when, or even if, an order would be forthcoming, and moreover, that DLA Aviation was reassessing any need for the parachutes. The following day, Niche abruptly laid off some 400 of its 740 employees. On May 1st and May 3rd, Niche held four meetings with employees to explain the apparent drastic loss of government business and the prospect that the layoffs would be permanent. On June 1, 2012, Niche mailed formal layoff notices to the 400

affected employees. On November 5, 2012, two of the casualties of the layoff, Julio Torres and Pedro de la Cruz, brought this putative class action lawsuit under the WARN Act against Niche.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." *Id*. A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

## DISCUSSION

The WARN Act requires an employer to give its employees sixty days

advance written notice of a mass layoff.[1] 29 U.S.C. 2102(a)(1).[2] However, "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." *Id*. § 2102(b)(2)(A). "The test for determining when business circumstances are not reasonably foreseeable focuses on an employer's business judgment." 20 C.F.R. § 639.9. Although an employer is not required to "accurately predict general economic conditions" that may affect demand for its products, it "must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demand of its particular market." *Id*. An unforeseen circumstance is one that is "caused by some sudden, dramatic, and unexpected action or condition outside the

---

[1] The Warn Act applies only to employers with 100 or more employees. 29 U.S.C. § 2101(a)(1). A "mass layoff" is defined as a reduction in force, not the result of a plant closing, that "results in an employment loss at the single site of employment during any 30-day period for – at least 33 percent of the [full-time] employees . . . and at least 50 [full-time] employees . . . or at least 500 [full-time] employees." *Id*. § 2101(a)(3). The parties contest only whether the circumstances leading to the layoff were foreseeable and do not otherwise dispute the application of the Warn Act to Niche.

[2] Advanced notification is intended to provide "workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow [them] to successfully compete in the job market. 20 C.F.R. § 639.1.

employer's control," such as "[a] principal client's sudden and unexpected termination of a major contract with the employer." *Id*.

The sole issue in dispute on summary judgment is whether Niche was relieved from the WARN Act notice requirement because its precipitous loss of government business was an unforeseeable circumstance beyond its control. Plaintiffs make two arguments against a grant of summary judgment. They first assert that Niche is precluded from invoking the exception because it gave employees no notice at all. Alternatively, plaintiffs contend that there is a genuine dispute of fact as to whether a commercially reasonable employer in Niche's position should have foreseen the possibility of a sudden shift in DOD procurement under a contract that had no fixed purchasing requirements and involved a fairly rarified specific-use commodity, namely cargo parachutes. The issue of foreseeability, however, need not be addressed because Niche is unable to invoke the unforeseeable business circumstances exception as a matter of law.

An employer relying on the unforeseeable business circumstances exception "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3). The WARN Act gives an employer a complete exemption in the event of a natural disaster. *Id*. § 2102(b)(2)(B) ("No notice under this chapter

shall be required if the . . . mass layoff is due to any form of natural disaster . . . ."). However, no similar absolution is granted for downturns in the business cycle that lead a company to shed employees as a cost-saving measure. Rather, the implementing regulations of the WARN Act provide that "[i]f one of the exceptions is applicable, the employer must give as much notice as is practicable . . . and this may, in some circumstances, be notice *after the fact*." 20 C.F.R. § 639.9 (emphasis added). Thus, "it is manifest that a WARN Act employer attempting to circumvent the 60-day notice requirement must still give *some* notice in accord with 29 U.S.C. § 2102(b)(3). The unforeseeable business circumstances defense does not jettison this absolute requirement under the WARN Act; even where the defense is properly invoked, *some* notice must be given." *Sides v. Macon Cnty. Greyhound Park, Inc.*, 725 F.3d 1276, 1284 (11th Cir. 2013) (emphasis in original); *see also Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1282 n. 11 (5th Cir. 1994) ("If an employer is providing less than sixty days notice pursuant to one of the statutory exemptions, the employer *must* 'provide a brief statement of the reasons for reducing the notice period.'" (quoting 20 C.F.R. § 639.9) (emphasis added)); *Oranogenesis, Inc. v. Andrews*, 331 B.R. 500, 502 (D. Mass. 2005) (even in instances in which the business circumstance exception applies, "the employer *must still* 'give as much notice

6

as is practicable and at that time shall give a brief statement of the basis for reducing the notification period.'" (quoting 29 U.S.C. § 2102(b)(3)) (emphasis added)).

Because it is clear that *some* notice is required before an employer may seek shelter under the exception, the determinative question is whether Niche's "after the fact" notice suffices as a ticket of admission. Niche argues that the WARN Act regulations explicitly permit retroactive notice of the kind it gave. The regulation, however, does not authorize belated notice in all instances, but only that "*in some circumstances*, [there may] be notice [given] after the fact." 20 C.F.R. § 639.9 (emphasis added).

In its commentary to the WARN Act implementing regulations, the Department of Labor (DOL) lists the specific circumstances in which an employer's after-the-fact notice of a layoff in response to governmental action would pass muster. The commentary states that, in the first instance, "closings which are the direct result of governmental action and which occur without notice should be counted as government ordered closings to which after the fact notice is applicable." 54 FR 16042 (Apr. 20, 1989). The commentary then distinguishes closings resulting from direct governmental action (where after-the-fact notice is permitted) from closings resulting from indirect governmental action (where it is not). As examples of direct

governmental action the DOL proffers "the closing of a restaurant by a local health department or the closing of [a] nuclear power plant by the Nuclear Regulatory Commission." *Id*. As examples of indirect action, the DOL points to an enforcement action by the Environmental Protection Agency or the Occupational Safety and Health Administration that results in the "closing of a plant by the employer either to remedy the violation or because it cannot continue to operate." *Id*. " These agencies do not [ ] directly order the closing of the plant and they usually give some notice of the violation and an opportunity to contest the findings. Such closings, *although they may result from a government action, are not government ordered* and are not subject to the same treatment." *Id*. (emphasis added).

The commentary then directly responds to the issue of the termination of a government contract.

> A commenter also suggested that terminations of government contracts should qualify as government ordered closings. In most cases, there is some notice of the government's intent to terminate a contract, even if the termination is for cause and, for the reasons stated above, *these contract terminations should not be treated as government ordered closings*.

*Id.* (emphasis added). If the outright termination of a contract does not qualify as a "government ordered closing" permitting after-the-fact notice, it follows, *a fortiori*, that the government's refusal to place an order under a non-

8

guaranteed contract would be doubly lacking in qualification. *Cf. United Mine Workers of Am. Int'l Union v. Lehigh Coal & Nav.* Co., 2006 WL 2623888, at *3 (M.D. Pa. Sept. 12, 2006) ("When [29 U.S.C. §] 2102(b)(1)[3] and 20 C.F.R. § 639.9 are read together, it is clear that in order to seek the protection of Section 2102(b)(1) an employer must give *reduced* notice *prior* to the shutdown. After-the-fact notice does not cure the failure to give notice prior to the shutdown." (emphasis in original)).[4] Because Niche provided no advance notice to affected employees, but only an explanation *after* the mass

---

[3] 29 U.S.C. § 2102(b)(1) states that "[a]n employer may order the shutdown of a single site of employment before the conclusion of the 60-day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business."

[4] Niche cites *Watson v. Michigan Indus. Holdings, Inc.*, 311 F.3d 760 (6th Cir. 2002), for the proposition that after-the-fact notice is permissible under the unforeseeable business circumstances exception. In affirming the district court's grant of summary judgment for the employer in *Watson*, the Sixth Circuit held that a customer's sudden and unexpected decision to withhold payment from a supplier was an unforeseeable business circumstance. The Court of Appeals did not discuss what notice, if any, was required to claim the exception, and if the decision is intended to imply that no notice at all is required, it conflicts with every other federal court decision that has addressed the issue. Moreover, there is no indication that after-the-fact notice was given by the employer in that case, thus it does not lend any support to Niche's position that retroactive notice satisfies the exception.

layoff occurred, the unforeseeable business circumstances exception does not apply.

## ORDER

For the foregoing reasons, Niche's motion for summary judgment is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns

_____
<u>UNITED STATES DISTRICT JUDGE</u>